DUCKER, JUDGE:
Claimant, Hibbard, O’Connor & Weeks, Inc., a Tennessee corporation, claims it is due the sum of $57,450.00 from the State of West Virginia, on account of a contract made by said claimant with the West Virginia Board of Education for claimant’s services in finding a purchaser for $1,915,000.00, principal amount, revenue bonds for the West Virginia State College Student-Union Dining Hall, at Institute, West Virginia, for which services the claimant was to receive a commission of three per cent of the said amount of said bonds, namely, the sum of $57,450.00. The bond issue involved in this case was designated as “Series B”, the issue previously sold as a part of the authorization being in the amount of $398,000.00 and designated as “Series A”.
No question of the procedural steps for the issuance and sale of -both series of these bonds is involved in this controversy, except that the State denies liability on the ground that the private sale made by claimant was not approved by the Attorney General and the Commissioner of Finance and Administration, and was made in contravention of an Executive Order promulgated by the Governor in January, 1969 prior to the sale in February, 1969. The claimant says that under the statutes relating to such a sale of this type of bond that the Governor’s Executive Order can not be effective in the matter.
There is no material conflict in the facts, which are as hereinafter related.
The West Virginia Board of Education had. sold the “Series A” Bonds to the Department of Housing & Urban Development m mid-January, 1969, but had not then received any bid on the “Series B” Bonds, 'and upon being advised so to do *110 entered into 'an agreement with Baker, Watts & Co., investment bankers of Baltimore, to place the Series B bonds on the open market. The latter agreement expired on February 8 without any success in selling the bonds. On February 11, the Board of Education was advised that the claimant had contacted the officers of ithie Board relative to acting as agents for the Board in the matter of the sale of the bonds ■and the Board was then advised that claimants had a buyer ready to purchase the Series B bond issue. And on said date of February 11, 1969 the Secretary of the Board polled all members to explore the proposal and advised them that, if feasible, the matter would be acted upon the next day, February 12. Claimant being a participant in the course of the negotiations and knowing all that was done and being done, had its client, Wilson White, Inc., a brokerage firm, make an offer dated February 11 to the Board for the purchase of the bond and accompanied said offer with a certified check for $38,000.00, the amount required as a deposit. The offer of Wilson White, Inc. was accepted by the Board on February 12, and then on February 24, 1969 in a regular meeting ratified and confirmed the sale, with one member voting in the negative.
During the negotiations and at the time of the conclusion of the sale contract on February 12, the officers of the Board and the representative of the claimant sought and obtained the opinion of Eugene G. Eason, attorney of Clarksburg, West Virginia, who had been designated by the Attorney General as bond counsel for the State in the West Virginia State College building projects. Mr. Eason approved as legal all the acts of the Board in making the bond sale and contracting for the commission to be paid to the claimant. His interpretation of the statutes relating to such a sale and contract, particularly Chapter 25, Article 1A, Section IB of the Code, was that the law fully empowers and authorizes the sale of the bonds, that the payment of a commission for the sale is a proper item of cost, and that the approval by the Attorney General and Commissioner of Finance was not necessary.
The evidence shows that the Board had received a bid from the construction firm of Kenhill Construction Company for the construction of the Student-Union Dining Room building which would expire either on February 13th or February 14th, *111 and that if the bonds were not sold prior to such expiration date, there could and most probably would be a large increase in the construction costs of the building, amounting to as much as from four and one-half to ten percent of the estimated construction costs of $1,404,000.00. The evidence also shows that the market for the bonds was bad and the prospects were that it would get worse, which it did, and that a sale of bonds which had no greater interest rate than six percent was very difficult, if not impossible at that time. Furthermore, the cost of re-advertising the sale and other incidental expenses was a real factor. The bonds were sold 'and delivered but the State Auditor refused to pay the three percent commission to the claimant on the basis of, as evidenced by his letter, the lack of the approval of the Attorney General and the Commissioner of Finance and Administration.
There was adequate evidence that the fee of three percent for the finding of a purchaser was a reasonable charge for the service rendered in this class of bonds, 'and we think that issue was satisfactorily proven by the testimony of the bond counsel for the Board and by the other testimony in that regard. As to the applicability of the statutes, particularly 25-1A-1B of the Code, we are constrained to agree with the opinion rendered to the parties by Eugene G. Eason, and hold the ■action of the Board to be legal, and in doing so we can not see how the Governor’s Executive Order can render an otherwise legal matter illegal.
Counsel for the State contend that this Court is without jurisdiction because claimant could have sought relief by a mandamus proceeding against the Auditor. Mandamus can only be maintained where 'there is a clear legal remedy. We cannot agree that there was a clear legal remedy, even though there may have been a clear legal contract existing between the State Board of Education and the claimant. As the Board of Education is an agency of the State and thus immune from suit under the Constitution, this Court i’s, we believe, the only forum for such a claimant.
As the State got the full benefit of the services rendered by claimant and would be unjustly enriched if claimant is not paid, and upon the theory of quantum meruit the claimant deserves to recover on its claim, we conclude that in equity *112 and good conscience the claimant is entitled to payment of its fee, and, accordingly, we award it the sum of $57,450.00.
Award of $57,450.00.